UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DESHAWN MAURICE COLBERT, JR.,
#728086,

    Petitioner,  Civil Action No. 17-cv-10012

vs.

    HON. BERNARD A. FRIEDMAN

MARK McCULLICK,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITIONER'S APPLICATION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS***

Petitioner Deshawn Maurice Colbert, Jr., has filed a *pro se* habeas corpus petition challenging his state convictions for first-degree, felony murder, Mich. Comp. Laws § 750.316(1)(b), and armed robbery, Mich. Comp. Laws § 750.529. He argues as grounds for relief that his right of confrontation was violated when a non-testifying co-defendant's statement was admitted in evidence, his trial attorney was ineffective for failing to make a timely objection to the error, and his post-arrest silence was erroneously used against him as an admission of guilt and for impeachment purposes. Respondent argues that petitioner's claims are procedurally defaulted and meritless. The Court agrees. Accordingly, the petition will be denied.

**I. Background**

Petitioner was tried before a jury in Calhoun County Circuit Court where the testimony established that --

> [i]n the evening hours of August 10, 2012, defendant and his father and two other cohorts entered the home of the victim, Larry Evans, to steal marijuana and/or money that they believed was inside the home. Ehabb Kelly, one of the victim's sons, was downstairs when

the men entered the house. He called 911 because he heard a commotion upstairs. He testified that someone yelled "[w]here's the bag" multiple times. Kelly, who hid behind a cabinet, testified that defendant came downstairs at one point, then went upstairs and told his cohorts that someone was hiding in the basement. Thereafter, defendant's father and another accomplice went downstairs to look for him, with one man indicating that he would "shoot [the] whole basement up." When the police arrived, defendant's father hid in the basement underneath a bed.

When police officers were outside the house, they heard one of the occupants of the house demanding to know "where's the bag[?]" Defendant and his accomplices ran from the home when they realized the police were there. Two of the officers chased and tackled defendant. Defendant's clothes were covered in what appeared to be blood. Laboratory tests later revealed that the victim's blood was on defendant's tennis shoes. When the officers went inside the victim's home, they found the victim on the floor, surrounded by blood. The victim had been the recipient of a savage beating and a single gunshot wound to the head. Officers found two handguns in the home; testing confirmed that the victim's blood was on both handguns and that one of the handguns fired the bullet that killed the victim.

Officer Jim Blocker of the Battle Creek Police Department interviewed defendant shortly after his arrest. Defendant waived his *Miranda*[1] rights and proceeded to give conflicting versions of what occurred at the victim's house. At first, he admitted to being at the victim's house, but denied knowing any of the other individuals who were present. Later, when confronted with the fact that one of the other individuals at the house was his father, defendant admitted to knowing his father was at the house. Later still, despite initially denying knowing anyone else who was at the house or knowing why they were there, defendant eventually admitted that he knew all of the men who went to the victim's house. He also admitted to knowing that one of the men, Deven Nelson, was known as a "shooter," and that Deven had a gun that evening. He also admitted that, before going to the house, Deven and his brother, Corey Nelson, told him that they were going to the victim's house because "this guy owed 'em money" and that they went there to "get n\* \* \* \* \* some money, so everybody gonna get his money."

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

*People v. Colbert*, No. 319452, 2015 WL 1227657, at *1 (Mich. Ct. App. Mar. 17, 2015) (unpublished) (footnote in original).

Petitioner waived his right to testify and did not present any witnesses. His defense was that he was merely present during the crime.

On October 16, 2013, the jury found petitioner guilty of felony murder and armed robbery. On November 21, 2013, the trial court sentenced petitioner to life imprisonment for the murder and to a concurrent term of thirty to sixty years for the armed robbery. The Michigan Court of Appeals affirmed petitioner's convictions, *see id.*, and on September 29, 2015, the Michigan Supreme Court denied leave to appeal. *See People v. Colbert*, 498 Mich. 886; 869 N.W.2d 601 (2015). On January 3, 2017, petitioner filed his habeas corpus petition pursuant to 28 U.S.C. § 2254.

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that

> **(d)** [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254. When deciding "whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact," a federal habeas court must "train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims, and . . . give appropriate deference to that

3

decision." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018) (citations omitted). Further, "[w]hen the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion, . . . a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id*. at 1192.

The Michigan Court of Appeals reviewed petitioner's claims for "plain error affecting substantial rights." *Colbert*, 2015 WL 1227657, at *2 and *4. However, because the Court of Appeals also elaborated on the issues under federal law when addressing petitioner's claims, its decision is entitled to deference under AEDPA. *Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017), *cert. den.*, 138 S. Ct. 1998 (2018).

AEDPA "imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010). To succeed on habeas review of his claims, a state prisoner must show that the state court's ruling on his claims "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits," *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011), and "state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence." *Baze v. Parker,* 371 F.3d 310, 318 (6th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

**III. Analysis**

Petitioner's first ground for relief alleges that his right to confront the witnesses against him was violated by his trial attorney's ineffectiveness. This claim consists of two

4

components. Petitioner is alleging that his rights under the Confrontation Clause were violated and that he was denied the effective assistance of trial counsel because counsel did not object to the constitutional error.

### A. The Confrontation Clause

Petitioner argues that his right of confrontation was violated when Detective Brad Wise testified about out-of-court statements made by petitioner's father, Deshawn Maurice Colbert, Sr. Mr. Colbert was one of petitioner's co-defendants, but the two of them were tried separately, and because Mr. Colbert did not testify at petitioner's trial, petitioner was unable to cross-examine him.

The Michigan Court of Appeals reviewed petitioner's claim for "plain error affecting substantial rights" because he did not object at trial to Detective Wise's testimony about Mr. Colbert's statements to Wise. The Court of Appeals went on to conclude that petitioner's right of confrontation was, in fact, violated, but that petitioner was not entitled to a reversal of his convictions because the alleged error did not affect the outcome of the trial or result in the conviction of an innocent person.

#### 1. Procedural Default Analysis

Respondent argues that petitioner's claim is procedurally defaulted. In the habeas context, a procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). Under the doctrine of procedural default, "a federal court will not review the merits of [a state prisoner's] claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). In this circuit,

> "[a] habeas petitioner's claim will be deemed procedurally defaulted if each of the following four factors is met: (1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner has not shown cause and prejudice excusing the default." [*Jalowiec v. Bradshaw*, 657 F.3d 293, 302 (6th Cir. 2011)]. To determine whether a state procedural rule was applied to bar a habeas claim, [courts] look "to the last reasoned state court decision disposing of the claim." *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc).

*Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013).

The first three procedural-default factors are easily satisfied here. First, Michigan's contemporaneous-objection rule is a state procedural rule, which requires defendants in criminal cases to preserve their appellate claims by first objecting in the trial court. *People v. Carines*, 460 Mich. 750, 761-64; 597 N.W.2d 130, 137-38 (1999). Petitioner violated this rule by not objecting at trial to Detective Wise's testimony regarding Mr. Colbert's admissions. *See* 10/9/13 Trial Tr. at 62-65 (ECF No. 8-7, pp. 17-18, PageID. 596-97).

Second, the Michigan Court of Appeals reviewed petitioner's claim for "plain error affecting substantial rights." A state appellate court's review of a claim for plain error constitutes enforcement of a procedural default. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).

Third, because Michigan's contemporaneous-objection rule is well established and normally enforced, it is an adequate and independent state ground for denying review of a federal constitutional claim. *Taylor v. McKee*, 649 F.3d 446, 450-51 (6th Cir. 2011).

The first three procedural-default factors are satisfied. Therefore, petitioner must show "cause" for his procedural error and resulting prejudice.

Petitioner alleges that his trial attorney was ineffective for failing to object to Detective Wise's testimony about his interview with petitioner's father. In certain circumstances, an attorney's failure to preserve a claim for review in state court can be "cause" to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). "Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution." *Id*. Petitioner must show that his trial "counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

As explained more fully below, trial counsel's allegedly deficient performance did not prejudice petitioner because there was substantial evidence of petitioner's guilt apart from his father's admissions to Detective Wise. Therefore, petitioner has not shown "cause" for his procedural default, and the Court need not determine whether the error under the Confrontation Clause prejudiced petitioner. *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000).

In the absence of "cause and prejudice," a habeas petitioner may pursue a procedurally defaulted claim if he can demonstrate that failure to consider his claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.' " *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Carrier*, 477 U.S. at 496). "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

7

Petitioner has not presented the court with any new evidence of actual innocence. Therefore, a miscarriage of justice would not occur if the Court failed to address the merits of petitioner's claim. The claim is procedurally defaulted because all four factors of a procedurally-defaulted claim are satisfied. The Court concludes in the following section that petitioner's claim also lacks substantive merit.

**2. On the Merits**

The Sixth Amendment guarantees a defendant in a criminal prosecution "the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. This right is "applicable to the States through the Fourteenth Amendment," *Idaho v. Wright*, 497 U.S. 805, 813 (1990), and it "includes the right to cross-examine witnesses." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). The Supreme Court has held that the admission of a co-defendant's confession in a joint trial violates a petitioner's right of confrontation even if the trial court instructed the jury to use the codefendant's incriminating confession only against the codefendant. *See Bruton v. United States*, 391 U.S. 123, 126 (1968).

Detective Brad Wise testified at petitioner's trial that he interviewed Mr. Colbert and that Mr. Colbert made the following admissions during the interview: He (Mr. Colbert) drove to the victim's house with his son to obtain marijuana through the use of force; he was present at the victim's house with his son and knew what was going on at that particular date and at that particular time; the two Nelson boys had guns with them on that particular night; and he saw his own son with a gun on that date and at that time. *See* 10/9/13 Trial Tr. at 62-64 (ECF No. 8-7, p. 17, PageID 596). Because petitioner had no opportunity to cross-examine Mr. Colbert about his incriminating remarks to Detective Wise, the Michigan Court of Appeals reasonably concluded

8

that Detective Wise's testimony about Mr. Colbert's remarks violated petitioner's Sixth Amendment right to confront the witnesses against him.

Errors under the Confrontation Clause, however, are subject to harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *Vasquez v. Jones*, 496 F.3d 564, 574 (6th Cir. 2007). On habeas review, an error is considered harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637-38 (1993).

The evidence against petitioner was substantial without the testimony about Mr. Colbert's admissions. During the criminal incident Ehabb Kelly heard people saying, "Where's the bag?" Kelly subsequently saw petitioner in the basement where Kelly was hiding, and he heard petitioner warn his cohorts that someone was in the basement. *See* 10/9/13 Trial Tr. at 31, 35-39 (ECF No. 8-7, pp. 9, 10-11, PageID. 588-90). The police later saw petitioner flee from the house, and they apprehended him a short distance away. *Id*. at 7-10 (ECF No. 8-7, pp. 3-4, PageID. 582-83). Petitioner subsequently admitted to a police officer that he was present when the Nelsons argued with the victim and that Deven Nelson "tussled" with the victim. Petitioner also informed the officer that Deven Nelson possessed a large gun in the house, that Deven was known for being a shooter, and that the victim owed the Nelsons some money. Additionally, Petitioner implied that the group had gone to the victim's home to obtain the money which was owed to them. *See* Attachment to Defendant-Appellant's Brief on Appeal at 19-24 (ECF No. 8-12, pp. 61-66, PageID. 746-51).[2]

---

[2] A videotape of the officer's interview with petitioner was played for the jury, but the content of the interview was not transcribed as part of the transcript of trial. Consequently, the Court has had to rely on a transcription of the interview which was attached to petitioner's brief on appeal.

There was additional evidence that the victim's blood was present on at least one of petitioner's shoes. *See* 10/15/13 Trial Tr. at 19, 28-29, 31 (ECF No. 8-9, pp. 6, 8-9, PageID. 646, 648-49). This evidence suggests that petitioner stood near the victim during the commission of the crime and was not merely present.

Given the substantial evidence against petitioner, the Confrontation Clause error could not have had a "substantial and injurious effect or influence in determining the jury's verdict." Thus, the error was harmless, and petitioner is not entitled to relief on his claim. His claim lacks merit in addition to being procedurally defaulted.

## B. Trial Counsel

Petitioner claims that his trial attorney was ineffective for failing to object when Detective Wise testified about Mr. Colbert's admissions. Petitioner asserts that this trial attorney's deficient performance prejudiced him because Mr. Colbert's statements to Detective Wise contradicted petitioner's defense that he was merely present during the commission of the crime.

The Michigan Court of Appeals concluded on review of petitioner's claim that, although defense counsel's performance fell below an objective standard of reasonableness, petitioner failed to show that a different result would have been reasonably probable but for counsel's deficient performance.

To prevail on his ineffective-assistance-of-counsel claim, petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. The deficient performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id*. at 688.

The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. A defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (internal and end citations omitted).

Even if the Court were to assume that defense counsel's performance was deficient, the evidence against petitioner was substantial. *See supra*, section III.A.2. Thus, there is not a reasonable probability that the outcome of the trial would have been different had defense counsel objected to the constitutional error. As such, counsel's failure to object did not prejudice petitioner, and the state appellate court's rejection of petitioner's claim was not contrary to, or an unreasonable application of, *Strickland*.

**C. The Use of Petitioner's Post-Arrest Silence**

Petitioner's final ground for relief is that the prosecution violated his right to due process by using his post-arrest silence as an admission of guilt and to impeach his subsequent statements to a police officer that he was merely present at the scene of the crime. The Michigan Court of Appeals reviewed this claim for "plain error affecting substantial rights" and then declined to find any error that was plain or obvious. The Court of Appeals also concluded that, even if plain error occurred, petitioner was not entitled to a reversal of his convictions because the error did not affect the outcome of the trial.

### 1. Procedural Default

Respondent argues on the basis of the state court's "plain error" review that petitioner's claim is procedurally defaulted. The Court agrees.

Michigan's contemporaneous-objection rule requires defendants in criminal cases to preserve their appellate claims by objecting on the same ground in the trial court. *People v. Buie*, 298 Mich. App. 50, 70-71; 825 N.W.2d 361, 374 (2012). Although defense counsel objected at trial when an officer testified about petitioner's silence at the time of his arrest, the objection was not based on petitioner's constitutional right to remain silent. Instead, defense counsel objected because the question had been asked and answered. *See* 10/8/13 Trial Tr. at 150-51 (ECF No. 8-6, p. 39, PageID. 565).

The Michigan Court of Appeals, moreover, relied on petitioner's failure to object on the same grounds at trial, and the contemporaneous-objection rule is an adequate and independent basis for denying relief. *Taylor*, 649 F.3d at 451. Furthermore, petitioner has not alleged "cause" for his failure to object, and he has not presented the Court with any new evidence of actual innocence. His claim is procedurally defaulted. The claim also lacks substantive merit for the following reasons.

### 2. On the Merits

The Fifth Amendment to the United States Constitution states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V. The Supreme Court has held that, "[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda,* 384 U.S. at 444. In *Doyle v. Ohio*, 426 U.S. 610, 619 (1976), the Supreme Court held that the use

of defendant's silence at the time of arrest and after receiving *Miranda* warnings violates the Due Process Clause of the Fourteenth Amendment. "*Doyle* therefore 'bars the use against a criminal defendant of silence maintained *after receipt of governmental assurances.*' " *Hendrix v. Palmer*, 893 F.3d 906, 923 (6th Cir. 2018) (emphasis added) (quoting *Anderson v. Charles,* 447 U.S. 404, 408 (1980) (per curiam)).

The questions and answers in dispute here occurred during police officer Antony Gancer's testimony about how he and another officer apprehended petitioner. The prosecutor's questions and Officer Gancer's responses read as follows:

> Q. [ the prosecutor] Okay, while you handcuffed [petitioner] did he say anything to you, either [to] you or in your presence?
>
> A. [Officer Gancer] He just surrendered at that particular time.
>
> Q. Did he tell you a man inside had been beaten or shot?
>
> A. No, sir.
>
> Q. Did he tell you that he was just there because it was a dope house, he was there to either smoke or buy dope?
>
> A. No, sir.
>
> Q. Did he tell you that his father was also located inside the home?
>
> A. No, sir.
>
> Q. Did he ever indicate who, if anyone, had beat the person that was contained within the home?
>
> A. No, sir.
>
> . . . .
>
> Q. And at no time when you were chasing him, securing him, or placing him in a patrol vehicle did he say anything to you?

A. No, sir.

10/8/13 Trial Tr. at 150-51 (ECF No. 8-6, p. 39, PageID. 565).

There is no indication in the record that petitioner was questioned by the police or advised of his constitutional rights when he was apprehended outside the victim's home late on August 10, 2012,[3] and the Supreme Court has not held that the use of a defendant's pre-*Miranda* silence violates the Constitution. *See Bond v. McQuiggan*, 506 F. App'x 493, 498 (6th Cir. 2012). The Sixth Circuit's ruling in *Combs v. Coyle,* 205 F.3d 269, 281 (6th Cir. 2000) – that the use of prearrest, pre-*Miranda* silence as substantive evidence of guilt violates the Fifth Amendment right against self-incrimination – is not controlling here because *Combs* is a pre-AEDPA case, which was decided under a de novo standard of review. *Jones v. Trombley*, 307 F. App'x 931, 934 n.1 (6th Cir. 2009). Therefore, the state court's rejection of petitioner's claim was not contrary to, or an unreasonable application of, any Supreme Court decision, and it would be improper to grant relief on petitioner's claim. *Bond*, 506 F. App'x at 498. Petitioner's claim lacks substantive merit in addition to being procedurally defaulted.

**IV. Conclusion and Order**

The state appellate court's rejection of petitioner's claims was not contrary to clearly established federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. Accordingly,

---

[3] Detective Jim Blocker testified that he advised petitioner of his constitutional rights and interviewed petitioner at the Battle Creek Police Department early on August 11, 2012. *See* 10/15/13 Trial Tr. at 48-53 (ECF No. 8-9, pp. 13-15, PageID. 653-55).

IT IS ORDERED that petitioner's application for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that a certificate of appealability shall not issue because reasonable jurists would not disagree with the Court's resolution of his constitutional claims or conclude that the issues presented are adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

IT IS FURTHER ORDERED that petitioner may not proceed *in forma pauperis* on appeal because an appeal could not be taken in good faith.

|  |  |
|---|---|
| Dated: July 23, 2019<br>Detroit, Michigan | s/Bernard A. Friedman<br>BERNARD A. FRIEDMAN<br>SENIOR U.S. DISTRICT JUDGE |

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on July 23, 2019.

|  |  |
|---|---|
| Deshawn Colbert, 728086<br>MUSKEGON CORRECTIONAL FACILITY<br>2400 S. SHERIDAN<br>MUSKEGON, MI 49442 | s/Johnetta M. Curry-Williams<br>Case Manager |